# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

GLORIA CALLAHAN, individually
and as next friend of Z.H., a
minor child,

    Plaintiff,

v.

YAMAHA MOTOR CORPORATION, USA,
a foreign profit corporation,
and DIXIE MOTORCYCLE MART,
INC., a Georgia corporation,

    Defendants.

CV 5:26-433

## ORDER

Before the Court is Plaintiff Gloria Callahan's motion to remand, dkt. no. 7, wherein she argues the removal of this case by Defendant Yamaha Motor Corporation, USA was improper.  Defendant has responded in opposition, dkt. no. 8, and the motion is ripe for review.

## BACKGROUND

This case arises from injuries sustained by Z.H., Plaintiff's minor child, when pressurized gasoline from a 2007 Yamaha Grizzly 700 all-terrain vehicle ignited on October 27, 2024 in Pierce County, Georgia.  Dkt. No. 1-1 ¶¶ 5, 6, 19, 21, 22.  In the complaint,[1] Plaintiff alleges the ATV was manufactured by Yamaha

---

[1] "When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and

Motor Co., Ltd. and distributed by Defendant Yamaha Motor Corp., USA ("YMUS").  Id. ¶¶ 8-9.  YMUS in turn sold the ATV to Defendant Dixie Motorcycle Mart ("DMM").  Id. ¶ 13.  DMM then sold the ATV to Larry Cornett, II.  Id. ¶ 14.  Through a series of familial transactions, ownership of the ATV was transferred to Tommy and Dana Cornett.  Id. ¶¶ 15, 16.  On the day of the incident, Z.H. had been riding the ATV with the Cornetts's son, Easton Cornett. Id. ¶ 19.  Easton and Z.H. stopped for gas, and, upon opening the fuel cap, pressurized gasoline burst upward, covering the premises.  Id. ¶ 21.  The gasoline ignited, causing severe burns to Z.H.  Id. ¶ 22.  Plaintiff alleges that a defect in the ATV allowed an overpressure condition to occur in the fuel tank.  Id. ¶ 10.  Plaintiff alleges that YMUS became aware of the defect as early as 2007, id. ¶ 11, and that DMM had actual or constructive knowledge of the defect at all relevant times, id. ¶¶ 44, 47.

Plaintiff filed a complaint on behalf of herself and Z.H. against YMUS, a citizen of California, and DMM, a citizen of Georgia, in the Superior Court of Pierce County, Georgia, on December 31, 2025.  Id. at 2.  Plaintiff, a Georgia citizen, brings four counts of negligent failure to warn against Defendants.  See id.  On April 2, 2026, YMUS removed the case to this Court on the

_____

construes all factual ambiguities in favor of the plaintiff." Gulf-to-Bay Anesthesiology Assocs., LLC v. UnitedHealthcare of Fla., Inc., No. 8:18-CV-233-EAK-AAS, 2018 WL 3640405, at *1 n.1 (M.D. Fla. July 20, 2018) (citing Willy v. Coastal Corp., 855 F.2d 1160, 1163-64 (5th Cir. 1988)).

2

basis of diversity jurisdiction.  Dkt. No. 1.  In its notice of removal, YMUS asserts "there is complete diversity between the properly joined parties, and the amount in controversy, exclusive of interest and costs, exceeds $75,000." Id. ¶ 13.  Notably, YMUS contends DMM was fraudulently joined as a defendant "to defeat diversity jurisdiction."  Id.  Indeed, the majority of YMUS's removal notice is spent arguing that Plaintiff has failed to state a claim against DMM and that it should not be a party to this lawsuit.  Id. at 3-6.  In response to removal, Plaintiff filed a motion to remand, arguing that the Court lacks subject matter jurisdiction over this case due to lack of diversity of citizenship.  Dkt. No. 7.  Thus, the question before the Court is whether DMM was fraudulently joined as a defendant, such that the diversity-of-citizenship requirement of diversity jurisdiction is met.

## LEGAL AUTHORITY

Federal courts are courts of limited jurisdiction and may only hear cases that they have been authorized to hear by the Constitution or by Congress.  See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).  A federal district court is authorized to assert its jurisdiction, however, when citizens of different states are involved and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

3

Therefore, where the parties are diverse and the amount in controversy prerequisite is sufficient, a defendant has a right, granted by statute, to remove an action from state court and avail itself of the federal court system.  28 U.S.C. § 1441; Burns, 31 F.3d at 1095.

The removing defendant, however, bears the burden of proving the existence of federal jurisdiction, Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1356 (11th Cir. 1996), and, because the jurisdiction of federal courts is limited, the Eleventh Circuit Court of Appeals favors remand of cases that have been removed where federal jurisdiction is not absolutely clear, Burns, 31 F.3d at 1095. In fact, removal statutes are to be strictly construed, with all doubts resolved in favor of remand.  Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir.1996), cert. denied, 520 U.S. 1162 (1997); Burns, 31 F.3d at 1095; see also Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100 (1941).

### DISCUSSION

From the face of the complaint, it appears the diversity-of-citizenship requirement is not met.  While Defendant YMUS is a California corporation, Plaintiff and Defendant DMM are both Georgia citizens.  Dkt. No. 1-1 at 2-3; Dkt. No. 1 ¶ 14.  YMUS asserts in its removal notice, however, that diversity of citizenship does exist among the *properly joined* parties because, YMUS contends, DMM was fraudulently joined.  Dkt. No. 1 ¶ 13.

4

Even if "on the face of the pleadings, there is a lack of complete diversity, an action may nevertheless be removable if the joinder of the non-diverse party . . . [was] fraudulent." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1988). "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." Id. The courts have recognized three situations in which joinder may be deemed fraudulent: (1) when there is no reasonable possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant; (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) when there is no real connection to the claim and the resident (non-diverse) defendant. Id.; see also Legg v. Wyeth, 428 F.3d 1317, 1325 (11th Cir. 2005).

As to the first type of fraudulent joinder, the type YMUS argues here, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a [*reasonable*] *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d at 1287; see also Legg, 428 F.3d at 1325 n.5 (stating that the "potential for legal liability must be reasonable, not merely theoretical" (internal quotation marks omitted)).

"The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings

5

at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." Legg, 428 F.3d at 1322 (quoting Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998)). "The proceeding appropriate 'for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under [Federal Rule of Civil Procedure 56].'" Id. at 1322–23 (quoting Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997)). Accordingly, all *contested* issues of substantive fact and any uncertainties as to the current state of the law must be resolved in the plaintiff's favor. See id. at 1323; see also Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). Importantly, the removing party bears the burden of proving fraudulent joinder, and the burden is "heavy." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997).

Here, YMUS argues in its removal notice that Plaintiff cannot establish a cause of action for negligent failure to warn against DMM because DMM owed no duty to Plaintiff, who was not the owner of the ATV. Dkt. No. 1 ¶¶ 19, 25. YMUS contends "product sellers only owe a duty to warn to the consumer who directly purchases the product at issue." Id. ¶ 22. In support, YMUS relies on Wilcher v. Redding Swainsboro Ford Lincoln Mercury, Inc., 743 S.E.2d 27 (Ga. Ct. App. 2013). In Wilcher, a 1996 Chevrolet Van carrying a driver and eight passengers crashed after a tire failure, killing one passenger and injuring seven others. Id. at 28. The injured

6

passengers, none of whom purchased the vehicle, brought suit against two automobile dealerships in the chain of sale—the wholesale dealer and the retailer dealer.  Id. at 28-29.  The Georgia Court of Appeals affirmed the grant of summary judgment to both dealerships, holding that neither owed a duty to inspect to the passenger-plaintiffs with respect to the alleged vehicle defect.  Id. at 32.

YMUS's reliance on Wilcher is misplaced.  First, Wilcher is a negligent inspection case in which the dealerships claimed to have no knowledge of the tire defect.  Id. at 30.  In the complaint in this case, Plaintiff alleges that DMM *knew* of the ATV's fuel tank defect, dkt. no. 1-1 ¶¶ 44, 47, which triggers a duty to warn the purchaser.  Boyce v. Gregory Poole Equip. Co., 605 S.E.2d 384, 389 (Ga. Ct. App. 2004) (A "retailer of a product which, to their actual or constructive knowledge, involves danger to users have a duty to give warning of such danger to the purchaser at the time of sale and delivery." (citation omitted)).  Second, Wilcher was decided at the summary judgment stage, and the court analyzed evidence when determining whether the dealerships owed a duty to the purchaser to inspect the vehicle in a non-negligent manner and whether the dealerships made representations about the vehicle's quality.  See 743 S.E.2d at 32.  Indeed, both dealerships sold the vehicle on an "as-is basis" without any representations as to the safety of the vehicle, which led the court to conclude that no

duty to inspect existed. Id. at 29, 32. In this case, however, the parties have not yet had the benefit of discovery to determine what representations, if any, DMM made to the ATV's original purchaser, whether the purchaser relied on any such representations, or whether DMM's alleged failure to warn the purchaser proximately caused Z.H.'s injuries. In short, Wilcher does not stand for the proposition that a retailer—like DMM—can *never* be liable to a third-party user—like Plaintiff or Z.H.—for negligent failure to warn.

YMUS next argues that, even if DMM had a duty to warn, Plaintiff cannot establish a cause of action against DMM because the ATV's alleged defect—the fuel tank component—"was plainly a latent defect." Dkt. No. 8 at 5. YMUS points out that, under Georgia law, retailers and dealerships are not responsible for discovering latent defects. Id. (citing King Hardware Co. v. Ennis, 147 S.E. 119, 121 (1929) ("It is the general rule that a vendor or dealer who is not the manufacturer is under no obligation to test an article purchased and sold by him for the purpose of discovering latent or concealed defects.")).

YMUS's argument misses the mark. Plaintiff does not allege that DMM failed to discover the ATV's defect; Plaintiff alleges that DMM *knew* about the defect and failed to warn the purchaser or Plaintiff. Dkt. No. 1-1 ¶¶ 44, 46, 47. As to that point, YMUS argues that "there are no facts alleged in Plaintiff's Complaint

8

that could possibly establish knowledge of the alleged defect by [DMM] at the time of sale." Dkt. No. 8 at 7.  With this argument, YMUS appears to ask the Court to apply federal pleading standards and conclude that Plaintiff has failed to sufficiently allege knowledge on the part of DMM.  But that is not the standard the Court applies when determining whether a party has been fraudulently joined.  Instead, the plaintiff "need only have a [reasonable] possibility of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d at 1287; see also Legg, 428 F.3d at 1325 n.5.  Further, when assessing the propriety of joinder, "all contested issues of substantive fact . . . must be resolved in the plaintiff's favor." Legg, 428 F.3d at 1323.

While Plaintiff might encounter difficulty in proving that DMM had knowledge of the ATV's fuel tank defect or that DMM's alleged failure to warn proximately caused Z.H.'s injuries, the Court concludes there is a reasonable possibility that Plaintiff states a valid cause of action against DMM.  Therefore, DMM is a properly joined defendant, and DMM's Georgia citizenship defeats the Court's diversity jurisdiction.  As such, Plaintiff's motion to remand, dkt. no. 7, is **GRANTED.**

**CONCLUSION**

YMUS, as the removing defendant, has not met its heavy burden to show that DMM was fraudulently joined.  Coward, 113 F.3d at

9

1538.   Accordingly, the Court lacks diversity jurisdiction over this matter, and Plaintiff's motion to remand, dkt. no. 7, is **GRANTED**.   This case is hereby **REMANDED** to the Superior Court of Pierce County, Georgia.

**SO ORDERED**, this 4th day of August, 2026.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA